IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE JACKSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12−cv−0233−MJR−SCW |
| ) | |
| M. HOFFMAN, CHRISTOPHER ) | |
| FLEMING, SGT. PELKER, TRACY ) | |
| HEIMAN, LT. CARTWRIGHT, FRANK ) | |
| EOVALDI, OFFICER MAYBERRY, ) | |
| JUSTIN ENGELAGE, OFFICER ) | |
| BISHOP, A. WALTER, OFFICER ) | |
| NEHRING, OFFICER SULSER, CLINT ) | |
| MAYER, OFFICER PROWELL, DR. ) | |
| SHEPHERD, DR. FAHIM, TRACY ) | |
| HARRINGTON, MICHAEL ATCHISON, ) | |
| and CHARLES MCDANIEL ) | |
| | |
| Defendants. | |

# REPORT AND RECOMMENDATION

**Williams, Magistrate Judge:**

This § 1983 case, in which *pro se* Plaintiff Maurice Jackson alleged deliberate indifference toward his medical needs, is before the Court on Defendant Dr. Fahim's Motion for Summary Judgment (Doc. 77) and Dr. Shepherd's Motion for Summary Judgment (Doc. 98) (hereinafter "Defendants") for failure to exhaust administrative remedies. For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** the Motions in Defendants' favor.

FACTUAL AND PROCEDURAL BACKGROUND

On March 14, 2012, Maurice Jackson, an inmate at Menard Correctional Center in Illinois, brought the instant suit pursuant to 42 U.S.C. § 1983. As relevant to these Motions, Plaintiff alleged that he was beaten and tormented by several guards on December 30, 2011 and

1

denied medical treatment afterwards by Defendants. (Doc. 1). Plaintiff also stated claims against Shepherd and Fahim based on withholding his blood pressure medication, but those claims have been split off into a separate case, 12-cv-960-GPM-DGW.

Fahim filed the instant Motion on February 7, 2013. (Doc. 77). Plaintiff never filed a response. Shepherd filed a virtually identical Motion for Summary Judgment on June 18, 2013. (Doc. 98). Plaintiff filed a Response to this Motion on June 25, 2013. (Doc. 103). At a status conference on July 7, 2013, the Court instructed Plaintiff that documents must be filed with the Court, not with opposing counsel, as there was some indication that Plaintiff was confused about proper filing procedures. The Court also construed Plaintiff's response to Shepherd's Motion as a Response to Fahim's Motion, as the Motions raised the same issues. The undersigned conducted a hearing on these issues on August 6, 2013. Plaintiff testified in support of his position. No witnesses testified for the Defense.

## PLAINTIFF'S GRIEVANCES

Plaintiff attached several grievances to his initial Complaint. He attached a grievance form titled "Emergency Grievance" dated and signed on January 9, 2012 and describing the excessive force incident generally, and his attempts to seek medical care afterwards. (Doc. 1-1, p. 3). However, on page three of the grievance, Plaintiff complains of having to sleep on the floor for three days until January 10, 2012, one day after the grievance was allegedly filed. (Doc. 1-1, p. 5). He also describes his attempt to seek medical care on January 13, 2012, four days after the grievance was allegedly filed. (Doc. 1-1, p.5). The grievance did not contain any handwriting other than Plaintiff's, and was not filed stamped as received by any IDOC staff.

Plaintiff also submitted a grievance dated January 24, 2012 as a follow up to his January 9, 2012 grievance, also stating that he had been unable to get medical care for his injuries and broadly alleging deliberate indifference on the part of medical staff. (Doc. 1-1, p. 10). Once

again, the grievance does not contain a file stamp from any IDOC office or any handwriting other than Plaintiff's.

Plaintiff submitted a grievance dated March 1, 2012 specifically naming Fahim and Shepherd for the first time, and alleging that they had refused to treat him after the December 30, 2011 incident. (Doc. 1-4, p. 2). This grievance, like the others before it, also did not contain a file stamp or any indication that it had been received or reviewed by prison staff or officials. (Doc. 1-4, p. 2).

While the above grievances were included in Plaintiff's Complaint, Plaintiff filed a Response to the Motion for Summary Judgment where he included different grievances. He included a grievance dated February 6, 2012. (Doc. 103, p. 5). The grievance has Plaintiff's signature, but the signature line is dated January 6, 2012. (Doc. 103, p. 5). The body of this grievance also references several attachments which are supposed to show that Plaintiff attempted to seek medical treatment from the Defendants. (Doc. 103, p. 6). Exhibits 10 and 11 to the grievance are both dated February 9, 2012 — three days after Plaintiff allegedly filed this grievance. (Doc. 103, p. 16-17). Exhibit 12 is dated February 14, 2012, more than a week after the grievance was allegedly filed. (Doc. 103, p. 18). This grievance also contains a file stamp from the Champaign County judicial district of February 27, 2012.[1]

Defendants have submitted exhibits that show that, contrary to Plaintiff's assertion that all his grievances were intercepted, destroyed, or ignored, Plaintiff received responses on his grievances filed both in December of 2011 and in May and July of 2012. (Doc. 99-1, pp. 7- 16). Plaintiff's IGRV Summary likewise shows that same pattern and records no grievances received in between January and March 2012. (Doc. 99-2, p. 18). Defendants also submitted a copy of

---

[1] Plaintiff's other pleadings and exhibits show that he sent his grievances to be filed stamped in state court on more than one occasion, although it is not clear what case he had pending there or what the relevance his grievances had to any state court cases.

Plaintiff's cumulative counseling summary from Menard. The counseling summary does not show any grievances submitted between January and March of 2012, although it does document at least two face to face contacts between Plaintiff and his grievance counselor during this same time period. (Doc. 99-3, p. 11). The entries are silent as to the events at issue here. The summary also shows that Plaintiff had a large number of grievances photocopied (although it does not show that these were submitted) immediately prior to filing his Complaint. (Doc. 99-3, p. 11). Finally, grievance officer Lori Oakley submitted grievance logs from Plaintiff's master file. (Doc. 99-4). None of the logs showed any grievances received during the relevant time period. (Doc. 99-4).

### LEGAL STANDARDS

1. ***Summary Judgment Standard***

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**[2] The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). See also Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings.")**. A genuine issue of material fact exists if the evidence is such that a reasonable

---

[2] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. ***Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011)**.

jury could return a verdict for the nonmoving party. **Anderson, 477 U.S. at 248**. A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. **Albiero v. City of Kankakee, 246 F.3d 927, 931–32 (7th Cir. 2001). See also Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." **Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010). Accord Anderson, 477 U.S. at 248 (finding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

### 2. *PLRA's Exhaustion Requirement*

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[3] **42 U.S.C. § 1997e(a).** Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. **Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008).**

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge

---

[3] It is clear that complaints about a prisoner's medical treatment are complaints about prison conditions for the purposes of the PLRA. **Witzke v. Femal, 376 F.3d 744, 751 (7th Cir. 2004) (citing Wilson v. Weiter, 501 U.S. 294, 299 n. 1 (1991) ("if an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement")).**

5

>determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

**Id. at 742.**

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. **Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).** When officials have been afforded this opportunity, the prisoner has properly exhausted all available remedies. **Id.** But if prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. **Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. **See Jones v. Bock, 549 U.S. 199, 218 (2007).**

### 3. Exhaustion Requirement under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Corrections' Grievance

Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to speak with their Counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. If the Counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).** "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code § 504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

7

**CONCLUSIONS OF LAW**

Plaintiff has alleged that the grievance process was unavailable to him because he filed grievances and received no responses to them. However, Defendants have submitted evidence that Plaintiff never filed relevant grievances. The grievances submitted by Plaintiff lack any indication he took steps to file them. They contain no file stamps and no responses. There is no record of any grievances in Plaintiff's master file, the CHAMPS summary, the IGRV system, and the ARB did not receive any. The records received from Menard, IDOC and the ARB do, however, indicate that Plaintiff was successfully availing himself of the grievance process both before and after the events at issue here. For the undersigned to accept Plaintiff's version of events, he would have to find that even though Menard had processed Plaintiff's grievances in the past, multiple guards and officials began a brief conspiracy to lose all record of them after the December 30, 2011 incident and then promptly gave up the conspiracy a couple months later.

Additionally, Plaintiff's testimony notably did not describe how he filed the grievances. He did not offer testimony that he filed his grievances on any particular day or used a specific method. He did not testify that he ever discussed the grievances with his counselor. Additionally, as pointed out by the Defense, Plaintiff's grievances contain multiple inconsistencies. At least two of them contained references to dates that occurred after the grievances were allegedly filed. Plaintiff offered no testimony to explain the inconsistencies flagged by the Defense. Overall, the undersigned did not find Plaintiff's testimony credible.

Plaintiff submitted four grievances with his pleadings that could possibly exhaust the claims against Fahim and Shepherd. The undersigned finds that the January 9, 2012 grievance was never filed. It references dates that occurred after the alleged filing, fails to appear on Plaintiff's counseling summary, and lacks a file stamp showing that it was received. It does not contain any response from anyone. Therefore, the undersigned finds that Plaintiff never filed this grievance.

8

The next grievance that could potentially cover the claims against Fahim and Shepherd is dated January 24, 2013. Although this grievance is at least internally consistent, there is also no evidence that it was ever filed. It is not file stamped and does not contain an institutional response. It is not referenced in Plaintiff's counseling summary, the IGRV database, or Plaintiff's master file. The undersigned finds that this grievance also was never filed.

The February 6, 2012 is particularly unconvincing. Although Plaintiff submitted numerous exhibits in support of the allegations in his Complaint, this grievance was not among them. It appeared for the first time as an exhibit to Plaintiff's Response. It has three different dates on it and contains exhibits dated after the grievance was allegedly filed. The only file stamp on it is from the circuit court of Champaign County, not Menard or anyone involved in grievance review. It does not contain a response. There is simply no evidence that this grievance was ever filed.

As to the March 1, 2012 grievance, the undersigned concurs with the opinions of Magistrate Judge Wilkerson and Judge Murphy in case no. 12-cv-960, which considered whether the March 1, 2012 grievance could have exhausted Plaintiff's claims that these same Defendants denied him blood pressure medication. The March 1, 2012 grievance also contains allegations relevant to the claims in this case. Plaintiff filed his Complaint on March 14, 2012, approximately two weeks after he filed this last grievance. The Illinois Administrative Code gives prison officials sixty (60) days to respond in such a situation. Plaintiff filed his Complaint on the fourteenth day. Therefore, even if the grievance was actually filed, it could not have been exhausted at the time Plaintiff filed his Complaint. Additionally, Plaintiff submitted no evidence in his Response or during his hearing to show that this grievance was ever exhausted.

Plaintiff also pointed to numerous letters or "kites" that he wrote directly to the health care unit. The federal courts take a strict approach to the issue of exhaustion and cannot

9

consider correspondence outside of the grievance procedure. Plaintiff's other correspondence is irrelevant.

Defendants have submitted sufficient evidence to show that Plaintiff never filed any grievances related to denial of medical treatment after his alleged altercation with the guards on December 30, 2011. The undersigned does not find Plaintiff's testimony and exhibits in rebuttal credible, and therefore **RECOMMENDS** that the Court **GRANT** Defendants Fahim and Shepherd's Motions for Summary Judgment.

## CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' separate Motions for Summary Judgment (Docs. 77 and 98) be **GRANTED**. If this Report is adopted, then all of Plaintiff's claims against Defendants Shepherd and Fahim for deliberate indifference to serious medical needs are dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). <u>Objections to this Report and Recommendation must be filed on or before August 26, 2013</u>. *See* FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).

IT IS SO ORDERED.
DATE:  August 7, 2013  /s/ *Stephen C. Williams*
　　　　　　　　　　　　　　　　　　　　　　　　STEPHEN C. WILLIAMS
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge